IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

KENNITH HARVEY,
    Plaintiff,

v.                                                   Civil No. 3:22cv169 (DJN)

UNITED STATES OF AMERICA,
    Defendant.

### **MEMORANDUM OPINION**

District courts have "exclusive jurisdiction of civil actions on claims against the United States, for money damages," for injuries made "by the negligent or wrongful act or omission of any employee of the Government . . ., under circumstances where the United States, if acting as a private person, would be liable to the claimant in accordance with the law of the place where the action or omission occurred." 28 U.S.C. § 1346(b)(1). Thus, absent a state law cause of action, a Federal Tort Claims Act ("FTCA") claim cannot lie. So is the case here.

Plaintiff Kennith Harvey ("Plaintiff") brings this action against the United States of America (the "Government" or "Defendant"), alleging violations of Virginia state law and seeking recovery under the Federal Tort Claims Act. Plaintiff alleges that the Department of Veterans Affairs ("VA") improperly released his medical records to the Virginia Department of Motor Vehicles ("DMV") in August and September 2019. This matter now comes before the Court on Defendant's Motion to Dismiss (ECF No. 7). For the reasons set forth below, the Court will GRANT Defendant's Motion to Dismiss (ECF No. 7) and DISMISS WITHOUT PREJUDICE Plaintiff's Complaint (ECF No. 1).

## I. BACKGROUND

This FTCA claim arises out of Defendant's alleged unauthorized disclosure of Plaintiff's medical records from the VA to the Virginia DMV. Plaintiff further alleges negligence on the part of the VA for the same disclosure and for allowing an unqualified individual to conduct a Saint Louis University Mental Status ("SLUMS") test under improper conditions and despite the lack of necessity for such a test. Defendant challenges Plaintiff's claims on two grounds: (1) that the alleged violations of federal law under the FTCA impose no Virginia law duty for which a remedy exists, nor an analogous federal law, and that if such duty exists, a statutory exception applies and (2) that Plaintiff failed to exhaust administrative remedies with regard to Plaintiff's negligence or medical malpractice claim.[1] (Def.'s Mem. in Support of Mot. to Dismiss ("MTD") (ECF No. 8) at 1.)

### A. Factual Background

Plaintiff is a retired, service-disabled veteran, with a disability resulting from a traumatic brain injury incurred during a 1999 motor vehicle accident. (Compl. ¶¶ 8–9.) Despite his injury, Plaintiff resumed his daily life, including driving a vehicle, following therapy and treatments. (Compl. ¶ 10.) Since the DMV cleared him to drive following his 1999 accident, Plaintiff has maintained a perfect driving record. (Compl. ¶ 11.)

On April 5, 2019, Plaintiff suffered a three-vertebrae back injury. (Compl. ¶ 12.) Plaintiff had surgery and attended rehabilitation through Hunter Holmes McGuire Veterans

---

[1] Plaintiff's Complaint alleges a general negligence claim, but to the extent that the claim is construed as one of general negligence, medical malpractice or other forms of negligent conduct, the challenge regarding a lack of exhaustion of administrative remedies remains the same.

2

Hospital,[2] a VA provider. (Compl. ¶ 13.) On June 24, 2019, Plaintiff enrolled in VA driving rehabilitation training, as recommended by Plaintiff's primary care physician and his trauma doctors. (Compl. ¶ 14.) Assessing whether Plaintiff needed a side-view or spot-view mirror due to his limited range of motion from his injury constituted the primary focus of the training. (Compl. ¶ 15.) VA employee Mr. Martinez acted as the Certified Driver's Rehabilitation Specialist for Plaintiff's intake. (Compl. ¶ 16.) Martinez informed Plaintiff that his file lacked notes to explain why Plaintiff needed to enroll in the rehabilitation program, and as a result, his August 7, 2019 appointment would consist of a behind-the-wheel assessment. (Compl. ¶ 16.)

On August 7, 2019, Plaintiff attended his appointment to take the assessment. (Compl. ¶ 18.) VA employee Davin Smith administered it. (Compl. ¶ 18.) The VA hired Smith in May 2019, but Smith did not become fully certified as a driver's training specialist until October 2019, after Plaintiff's test. (Compl. ¶ 18.) Smith "was unable to locate any instructions . . . on how to proceed" with the assessment and instead decided to administer SLUMS examination. (Compl. ¶ 19.) The SLUMS test measures cognitive function or impairment, including dementia. (Compl. ¶ 20.) Plaintiff objected to the test as his physical injury did not affect his mental status. (Compl. ¶ 21.) Despite Plaintiff's objections, Smith required Plaintiff to take the SLUMS test. (Compl. ¶ 22.) Plaintiff's score, as calculated by Smith, suggested a diagnosis of "possible dementia." (Compl. ¶ 22.) Plaintiff alleges that Smith failed to administer the test according to VA specifications for space, noise and privacy; that Smith failed to correctly note responses to questions; that Smith incorrectly calculated the final score; and that all of this combined to indicate Plaintiff's possible dementia diagnosis. (Compl. ¶ 23.) Smith did not seek

---

[2] The name of this hospital has since changed to the Central Virginia VA Health Care System.

another opinion on the dementia assessment and forwarded the results to the Virginia DMV. (Compl. ¶ 25.)

The DMV suspended Plaintiff's license as a result of the assessment and issued suspension notices on August 11, August 12, September 9 and October 1, 2020. (Compl. ¶ 27.) Plaintiff saw his physicians due to the suspension, following the DMV's demands for medical examinations before his license could be reinstated. (Compl. ¶ 28.) Dr. Roosevelt Dean, Plaintiff's primary care physician, and Dr. Cynthia Washington, his neurologist, did not agree with Smith's assessment of dementia, and none of Plaintiff's providers had any concern about his ability to drive. (Compl. ¶¶ 24–25.) Despite this, eventually Dr. Dean signed off on a DMV Customer Report Form, because Plaintiff[3] informed him that the DMV required it for Plaintiff to acquire a restricted license. (Compl. ¶ 24.) Dr. Washington refused to do so. (Compl. ¶ 24.)

Plaintiff further alleges that Smith improperly conducted the September 5, 2019 DMV Customer Medical Report (the "Report"), which the DMV rejected due to incompletion. (Compl. ¶ 29.) This hampered Plaintiff's ability to meet a September 12, 2019 deadline to avoid suspension of his license. (Compl. ¶ 29.) Furthermore, to complete the Report, Smith, or other employees of the VA, provided medical information to the DMV on at least nine (9) different occasions between August 9 and September 25, 2019. (Compl. ¶ 30–31.)

VA policy requires a fully executed VA Form 10-5345 (Request for and Authorization to Release Health Information) to release health information to a third party, in accordance with the Health Insurance Portability and Accountability Act ("HIPAA"). (Compl. ¶ 33.) The VA Driver's Training section uses VA Form 3288 (Request for and Consent to Release of

---

[3] Plaintiff's Complaint fails to allege who informed Dr. Dean that he needed to sign the Customer Report Form for Plaintiff to acquire a restricted license. The Court draws the reasonable inference that Plaintiff acted as the informant.

4

Information from Individual's Records) to authorize the release of non-health information to third parties. (Compl. ¶ 34.) Plaintiff asserts that form 3288 "is not HIPAA compliant and is not sufficient to authorize the disclosure of a patient's health or medical records to third parties." (Compl. ¶ 35.) Regardless, Plaintiff never executed either form and never authorized the VA to release his medical records to the DMV or any other party. (Compl. ¶ 36.)

The DMV has yet to reinstate Plaintiff's driving privileges. (Compl. ¶ 40.)

**B.     Procedural History**

On October 22, 2020, Plaintiff filed a complaint against the VA for the unauthorized release of his medical records to the DMV and for allowing an unqualified Mr. Smith to conduct the SLUMS test and make a finding of dementia. (Compl. ¶ 37.) On November 13, 2020, VA Mid-Atlantic Health Care Network Director Deanne Seekins provided the VA's finding regarding Plaintiff's complaint: "It has been determined that neither of the aforementioned forms have been found to be a part of your medical record; therefore, it cannot be substantiated that it was received prior to . . . your testing results." (Compl. ¶ 38.) Plaintiff also alleges that Seekins further states in the letter that "corrective actions were taken by the Central Virginia VA Health Care System in Richmond, VA to ensure that this incident does not occur again," including by instituting corrective actions such as training and internal controls. (Compl. ¶ 39.)

On January 10, 2021, Plaintiff informed the United States that he intended to pursue a tort claim against the Government based upon the VA's improper release of Plaintiff's medical records to the DMV. (Compl. ¶ 2, Ex. A ("Letter to VA").) On February 16, 2021, the VA's Office of General Counsel ("GC") confirmed receipt of Plaintiff's letter and noted that the VA had six months to consider his claim before Plaintiff could file suit in federal district court. (Compl. ¶ 3.) On September 30, 2021, the VA GC delivered its findings and denied Plaintiff's

5

tort claim because (1) the Privacy Act is a federal statute with no state law duty, thus there exists no FTCA remedy and (2) there exists no common-law tort redress for this cause of action under Virginia law, thus also not implicating the FTCA. (Compl. ¶ 4, Ex. B ("VA Denial").) The VA noted that Plaintiff must initiate suit within six months of the denial letter. (Compl. ¶ 4; VA Denial at 1.)

Plaintiff filed his Complaint on March 29, 2022. (ECF No. 1.) On August 12, 2022, the Government filed Defendant's Motion to Dismiss. (ECF No. 7.) On August 26, 2022, Plaintiff filed Plaintiff's Opposition to Defendant's Motion to Dismiss (ECF No. 9), and on September 1, 2022, the Government filed its Reply (ECF No. 10), rendering this matter ripe for review.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint or counterclaim; it does not serve as the means by which a court will resolve factual contests, determine the merits of a claim or address potential defenses. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a motion to dismiss, the Court accepts the plaintiff's well-pleaded allegations in the complaint as true and views the facts in the light most favorable to the plaintiff. *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Under the Federal Rules of Civil Procedure, a complaint or counterclaim must state facts sufficient to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). As the Supreme Court opined in *Twombly*, a complaint or counterclaim must state "more than labels and conclusions" or a "formulaic recitation of the elements of a

6

cause of action," though the law does not require "detailed factual allegations." *Id.* (citations omitted). Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," rendering the right "plausible on its face" rather than merely "conceivable." *Id.* at 555, 570. Thus, a complaint or counterclaim must assert facts that are more than "merely consistent with" the other party's liability. *Id.* at 557. The facts alleged must be sufficient to "state all the elements of [any] claim[s]." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002) and *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

A motion made pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the court's jurisdiction over the subject matter of the complaint. A defendant moving for dismissal for lack of subject matter jurisdiction may attack the complaint on its face, asserting that the complaint "fails to allege facts upon which subject matter jurisdiction can be based." *White v. CMA Constr. Co.*, 947 F. Supp. 231, 233 (E.D. Va. 1996) (internal citations omitted). When a defendant asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction, the court applies a standard patterned on Rule 12(b)(6) and assumes the truthfulness of the facts alleged in the complaint. *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009). The Court must dismiss an action if it determines that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

### III. ANALYSIS

#### A. Federal Tort Claims Act

"As a sovereign, the United States is immune from all suits against it absent an express waiver of its immunity." *United States v. Sherwood*, 312 U.S. 584, 586 (1941); *see also F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal

7

Government and its agencies from suit."). "[T]he terms of [the Government's] consent to be sued in any court define that court's jurisdiction to entertain the suit." *Sherwood*, 312 U.S. at 586–87 (citing *Minnesota v. United States*, 305 U.S. 382, 388 (1988)). As such, courts strictly construe all waivers of sovereign immunity "in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192 (1996). Thus, "it is the plaintiff's burden to show that an unequivocal waiver of sovereign immunity exists and that none of the statute's waiver exceptions apply to his particular claim," and if not, then the court must dismiss the plaintiff's claims. *Welch v. United States*, 409 F.3d 646, 650–51 (4th Cir. 2005) (citing *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995) and *Medina v. United States*, 259 F.3d 220, 223 (4th Cir. 2001)).

"The FTCA creates a limited waiver of the United States' sovereign immunity by authorizing damages actions for injuries caused by the tortious conduct of federal employees acting within the scope of their employment, when a private person would be liable for such conduct under state law." *Suter v. United States*, 441 F.3d 306, 310 (4th Cir. 2006) (citing 28 U.S.C. § 1346(b)(1)). Therefore, the FTCA "permits the United States to be held liable in tort in the same respect as a private person . . . under the law of the place where the act occurred." *Medina*, 259 F.3d at 223 (citing *Harris v. United States*, 718 F.2d 654, 656 (4th Cir. 1983)). The statute does not create causes of action, it merely confers jurisdiction "when the alleged breach of duty is tortious under state law, or when the Government has breached a duty under federal law that is analogous to a duty of care recognized by state law." *Goldstar (Panama) S.A. v. United States*, 967 F.2d 965, 969 (4th Cir. 1992). Thus, unless a plaintiff pleads (1) a state statute under which a duty arises or (2) a federal law with an analogous state law tort, there exists no subject matter jurisdiction for the federal district court, and the Court must dismiss the plaintiff's claim.

8

"Because the Government's potential immunity from suit affects our jurisdiction, we first consider whether Congress has waived sovereign immunity in this instance." *Medina*, 259 F.3d at 223. Since the VA official's alleged tortious acts occurred in Virginia, the Court applies Virginia substantive law. *United States v. Neustadt*, 366 U.S. 696, 706 n.15 (1961); *Meyer*, 510 U.S. at 478 (1994) ("[W]e have consistently held that § 1346(b)'s reference to the 'law of the place' means law of the State — the source of substantive liability under the FTCA."). The Court now turns to whether Plaintiff's claims plead a cause of action with a remedy under Virginia law.

### B.  Disclosure of Medical Records Claim

The Government challenges Plaintiff's disclosure of medical records claim under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted. Defendant argues that there exists no cause of action under Virginia law as (1) Virginia substantive law lacks a duty which the Government violated such that the FTCA provides a remedy and (2) if a duty exists, the Government's disclosure falls under a statutory exception. (MTD at 7; Reply at 3.)

### 1.  No state law cause of action exists

The Government first argues that no duty exists under Virginia law for which the FTCA provides a remedy for improper disclosure of medical records. The Court finds that a duty exists, but Plaintiff lacks a private cause of action under Virginia law.

### a.  A common law tort is established

"A State's highest court is unquestionably 'the ultimate exposito[r] of state law.'" *Riley v. Kennedy*, 553 U.S. 406, 425 (2008) (quoting *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975)). In *Fairfax Hospital v. Curtis*, the Virginia Supreme Court, as a matter of first impression, examined a similar claim to here when a plaintiff sued a hospital and its employees for improper

9

dissemination of confidential medical information to third parties without consent. 492 S.E.2d 642 (Va. 1997). The Court held "that in the absence of a statutory command to the contrary, or absent a serious danger to the patient or others, a health care provider owes a *duty to the patient* not to disclose information gained from the patient during the course of treatment without the patient's authorization, and that violations of this duty *give rise to an action in tort*." *Id.* at 645. Thus, the Virginia Supreme Court established a tort for improper disclosure of medical records. However, the sole source of this ruling arose from the common law and the *Fairfax Hospital* Court did not specify a remedy. 492 S.E.2d at 647 (citing no source of this duty); *see also In re Maple*, 434 B.R. 363, 375–76 (Bankr. E.D. Va. 2010) (citing *S.R. v. Inova Healthcare Services,* 49 Va. Cir. 119, 121–22 (Fairfax Co. 1999) (interpreting *Fairfax Hospital* as establishing a common law "tort for wrongful disclosure of confidential information gained during the course of treatment" rather than creating a statutory right of action under Virginia Code)). However, as mentioned above, the *Fairfax Hospital* Court explicitly states that this tort exists only so long as a contrary statutory command does not exist.[4]

   **b.**  **The VHRPA codified *Fairfax*'s duty not to disclose, but eliminated a private cause of action**

Enacted in 1997, following the Virginia Supreme Court's decision in *Fairfax*, the Virginia Health Records Privacy Act ("VHRPA") codified a patient's right to the privacy of their health records:

---

[4]  The Virginia Supreme Court subsequently curtailed this duty itself in *Shumate v. City of Martinsville*, holding that the tort's duty not to disclose may not be expanded outside of healthcare providers, either under the common law or the subsequently enacted statute, the Virginia Health Records Privacy Act, which codified the right. 2016 WL 5327477, at *2 (Va. 2016) (holding that the duty did not cover police departments or police officials).

> There is hereby recognized an individual's right of privacy in the content of his health records. . . . and, except when permitted or required by this section or by other provisions of state law, no health care entity, or other person working in a health care setting, may disclose an individual's health records.

§ 32.1-127.1:03(A). However, the VHRPA's right to nondisclosure of private health records is more limited than the common law tort established in *Fairfax*. 492 S.E.2d at 645 (envisioning narrowing of the tort if there exists "a statutory command to the contrary"). Under the VHRPA, only administrative or civil enforcement remedies remain available; the statute does not create a private right of action under state law.

The context in which the VHRPA exists further informs the Court's analysis. Title 32.1, chapter 5, of the Virginia Code "imposes various obligations on licensed nursing homes and authorizes the Board of Health to promulgate regulations consistent with its statutory mandate." *Id.* (citing §§ 32.1–123, *et seq.*). Nothing, however, authorizes private parties to bring civil actions to enforce this chapter. Instead, "the governing statutes and regulations recognize only two methods of enforcing the Board's regulations: (i) administrative sanctions and adjudications subject to the Virginia Administrative Process Act and (ii) civil enforcement actions filed by the Commissioner in circuit court." *Id.* The statute lacks any express or implied authorization that private parties may file civil actions in court and, critically, the Virginia Supreme Court has held that "[w]hen a statute is silent, . . . courts have no authority to infer a statutory private right of action without demonstrable evidence that the statutory scheme necessarily implies it." *Cherrie v. Virginia Health Servs., Inc.*, 787 S.E.2d 855, 858 (Va. 2016).

Furthermore, courts will not "imply such a right when a method of judicial enforcement already exists," as it does here through administrative sanctions and Commissioner-brought civil enforcement actions. *Whittaker v. O'Sullivan*, 2022 WL 3215007, at *13 (E.D. Va. Aug. 9, 2022) (citing *Michael Fernandez, D.D.S., Ltd. v. Comm'r of Highways*, 842 S.E.2d 200, 203 (Va.

11

2020)) (holding no private right of action exists for unauthorized disclosure of an inmate's medical records despite a statutory section limiting disclosure in particular circumstances)). While several Virginia Code sections referring to § 32.1-127.1:03 do reference civil liability arising from the VHRPA, *see, e.g.*, § 54.1-2400.9 (excepting civil liability under § 32.1-127.1:03 for dissemination of records to the DMV when there exists a driving safety risk from the patient), these sections reference liability arising from civil enforcement actions brought by the state, not private parties, thus further underscoring the lack of a private right of action.

Thus, while affirming the existence of a duty of nondisclosure under the VHRPA, the Virginia Supreme Court held in *Shumate* that the statute "'does not expressly provide for any *private* right of action imposing civil liability' nor can a private right of action be implied." 2016 WL 5327477, at *2 (quoting *Vansant & Gusler, Inc. v. Washington*, 429 S.E.2d 31, 33 (Va. 1993)) (emphasis added); *see also Warner v. Doucette*, 2019 WL 3432744, at *7 (W.D. Va. July 30, 2019) (finding that "[t]he Supreme Court of Virginia, albeit in an unpublished decision, has ruled that [the VHRPA] does not" "provide for a private right of action").

Therefore, under the VHRPA, only administrative or civil enforcement remedies exist. As Plaintiff lacks a private right of action for improper records disclosure under Virginia law, his FTCA claim cannot stand on these grounds.

    **c.**  **Plaintiff's allegations fail to establish another state law cause of action**

Plaintiff's additional allegations that he completed the wrong forms and thus his authorization remains invalid also do not give rise to a state law claim under the FTCA. The Virginia Supreme Court held in *Va. Ry. & Power Co. v. Godsey* that "[p]rivate rules may require of employ[e]es less or more than is required by law; and whether a given course of conduct is negligent, or the exercise of reasonable care, must be determined by the standard fixed by law,

12

without regard to any private rules of the party." 83 S.E. 1072, 1073 (Va. 1915); *Murphy v. United States*, 383 F. App'x 326, 335 (4th Cir. 2010). Thus, the use of the incorrect VA or DMV forms does not alone suffice for a state law cause of action, and Plaintiff's FTCA claim fails on this ground, as well.

### 2. No analogous federal and state law duty exists

The Court also finds that the Government has not "breached a duty under federal law that is analogous to a duty of care recognized by state law." *Goldstar (Panama) S.A.*, 967 F.2d at 969. As noted above, "negligent performance of (or failure to perform) duties embodied in federal statutes and regulations may give rise to a claim under the FTCA . . . *only* if there are analogous duties under local tort law." *Art-Metal, U.S.A.*, 753 F.2d at 1157 (emphasis in original); *see also Sterling v. United States,* 798 F.Supp. 47, 48 (D.D.C. 1992) (a plaintiff claiming improper release of information by federal government cannot state a claim where "[t]here is no allegation of any violation of underlying state law other than a vague reference to 'negligence'").

Accordingly, to the extent that a plaintiff brings an FTCA claim for violations of federal law, these claims fail as a matter of law. *See Demoruelle v. United States*, 2015 WL 6478610, at *4 (D. Haw. Oct. 26, 2015) (holding that "HIPAA and the Privacy Act are federal statutes, and a claim for the alleged violation of either statute is not cognizable under the FTCA."). "[T]he FTCA does not waive sovereign immunity for causes of action where the claimed negligence arises out of the failure of the United States to carry out federal statutory duties or otherwise follow federal law." *Dettling v. United States*, 983 F. Supp. 2d 1184, 1199 (D. Haw. 2013) (citing *Meyer*, 510 U.S. at 478). The FTCA's language means that a federal statute which provides for a private right of action against the government cannot, without more, create a duty

13

on the part of the federal government giving rise to tort liability under the FTCA. *See Art Metal–U.S.A. v. United States,* 753 F.2d at 1156 n.10, 1157 (reiterating the "well-established principle that the violation of a federal statute or regulation by government officials does not of itself create a cause of action under the FTCA"). The potential HIPPA and Privacy Act violations alleged thus cannot form the basis of Plaintiff's FTCA claim. As no analogous Virginia private cause of action exists, *see infra* Section II.B, Plaintiff's claims fail on this ground, as well.

As both the common-law and statutory-based avenues to bring a private wrongful disclosure of confidential medical records claim are foreclosed, Plaintiff fails to plead a claim under the FTCA. Plaintiff tries to circumvent this by asserting a general duty of healthcare providers to "preserve the confidentiality of information about the patient which was communicated to the health care provider or discussed . . . during the course of treatment." (Reply at 4 (citing *Fairfax Hosp.*, 492 S.E.2d at 645, and *Parker v. Carilion Clinic*, 819 S.E.2d 809, 817, 823–24 (Va. 2018) (declining to address on appeal whether a viable cause of action existed when a healthcare provider's employee makes an extra-judicial disclosure of confidential information without patient authorization).) The Government counters that this confidentiality and disclosure prohibition has exceptions under state statutory law, one of which applies here. The Court agrees.

### 3. State Law Disclosure Exception

As mentioned above, the Virginia Health Records Privacy Act prohibits healthcare providers from disseminating, without patient authorization, confidential medical records to third parties, upon fear of civil enforcement or administrative sanctions. However, even assuming that a private right of action exists under the VHRPA, the statute's prohibition on disclosure comes with caveats:

14

> Health care entities may, and, when required by other provisions of state law, shall, disclose health records: . . . [a]s required or authorized by law relating to public health activities, health oversight activities, serious threats to health or safety, or . . . relating to . . . public safety, . . . including, but not limited to, those contained in . . . § 54.1-2400.9 . . . .

§ 32.1-127.1:03(D)(6). Section (D) also allows healthcare-provider disclosure of medical records of a patient "where necessary in connection with the care of the individual" and "when the individual has waived his right to the privacy of the health records." *Id.* § (7), (9). Most relevant here, Virginia Code section 54.1-2400.9 reads:

> Any [healthcare professional] who reports to the Department of Motor Vehicles the existence, or probable existence, of a mental or physical disability or infirmity of any person licensed to operate a motor vehicle which the reporting practitioner believes affects such person's ability to operate a motor vehicle safely shall not be subject to civil liability under § 32.1-127.1:03 resulting from such report . . . .

This provision bars suit for third-party disclosure of medical records under the VHRPA.

Plaintiff's allegations fall directly under the statutory exception: Plaintiff's healthcare providers at the VA shared his medical information with the Virginia DMV following his alleged failure of the SLUMS test. First, Smith's assessment of potential dementia reasonably supported concerns regarding "a mental or physical disability" of Plaintiff. § 54.1-2400.9. Second, while Plaintiff counters that his doctors did not believe that he was unfit to drive safely — as they disagreed with the dementia diagnosis — Plaintiff still must contend with two concessions he makes: (1) that Dr. Dean signed off on the DMV Customer Report form for Plaintiff to receive a restricted license and (2) that his medical providers required him to be cleared to drive initially due to a physical infirmity resulting from his neck injury. (Compl. ¶¶ 14, 24–25.) Together, these combine to suggest that Plaintiff's "practitioner believes [a disability] affect[s] such person's ability to operate a motor vehicle safely." § 54.1-2400.9. As the General Assembly

contemplated this exact type of sharing of medical information between healthcare providers and state agencies to ensure public safety, the Court finds that the liability exception also applies.

Thus, even if a private state law cause of action for improper disclosure of medical records exists, Plaintiff lacks a cognizable claim under state law due to the applicable statutory exception of the VHRPA. Therefore, the Court holds that Plaintiff cannot bring a claim under the FTCA for unauthorized disclosure of medical records.

### C. Negligence or Medical Malpractice Claim

Plaintiff attempts a second bite at the apple for the improper disclosure of medical records claim in Count II of the Complaint by asserting a claim for negligence. However, Plaintiff fails to flesh out the theory of negligence under which he brings his claim. At times, the claim sounds in medical malpractice, while at others it rests on negligent training or wrongful disclosure of medical records. To the extent that Count II reiterates the same cause of action as Count I, wrongful disclosure, the Court again finds that the claim fails as a matter of law. *See infra* Section II.A–B.

Additionally, Defendant contends that "to the extent that Plaintiff's claims are liberally construed as a medical malpractice claim, it should be dismissed." (MTD at 4); *see, e.g.*, (Compl. ¶¶ 21–26, 60 (allegations regarding the contested dementia diagnosis).) The Government argues that if Plaintiff's claims involving VA providers sound in the tort of medical malpractice, the Court must dismiss the claims under Fed. R. Civ. P. 12(b)(1) for failure to exhaust administrative remedies, as required under the FTCA. The Court agrees, finding that Plaintiff failed to exhaust administrative remedies with regard to his second claim, regardless of whether it sounds in medical malpractice or negligent failure to train.

The FTCA requires that:

16

> An action shall not be instituted upon a claim against the United States . . . , unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C § 2675(a). "It is well-settled that the requirement of filing an administrative claim is jurisdictional and may not be waived." *Henderson v. United States*, 785 F.2d 121, 123 (4th Cir. 1986) (quoting *Kielwien v. United States*, 540 F.2d 676, 679 (4th Cir. 1976)).

Here, Plaintiff brought his claim of unauthorized disclosure of medical records to the VA, but his letter did not contain any allegations of medical malpractice or any other forms of negligence. (Letter to VA.) The heading of the letter "Claim of improper release of medical information by Department of Veterans Affairs to the Department of Motor Vehicles" only mentions one claim. (Letter to VA at 1.) Even if liberally construed, Plaintiff's allegation that "the [VA] allowed a newly hired Driver Rehab specialist to *submit* a suspicious diagnosis to the [DMV]," (Letter to VA at 1) (emphasis added), solely challenged the VA's improper dissemination of medical information. Similarly, the VA's response only focused on the improper release claim (VA Denial at 1), and the FTCA requires both (1) the claimant presenting the claim to the agency and (2) an agency denial of the claim. § 2675(a).

In *Dagulo v. United States*, the court held that "[u]nder these circumstances, . . . Plaintiff cannot maintain his medical[] malpractice claim in this Court, pursuant to the FTCA, when his underlying FTCA administrative claim, which is a prerequisite to filing suit in federal court, made no mention of this claim, and relied solely on federal statutes." 2020 WL 2846488, at *7 (E.D. Va. Apr. 17, 2020), *aff'd*, 829 F. App'x 640 (4th Cir. 2020) (bringing only federal Privacy Act and HIPAA administrative claims, the plaintiff's medical malpractice claim could not be maintained in federal court as exhaustion had not occurred). So too here. Accordingly, Plaintiff's Count II fails for lack of administrative exhaustion.

## CONCLUSION

For the reasons set forth above, the Court hereby GRANTS Defendant's Motion to Dismiss (ECF No. 7) and hereby DISMISSES WITHOUT PREJUDICE Plaintiff's Complaint (ECF No. 1).

An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

_____/s/_____
David J. Novak
United States District Judge

Richmond, Virginia
Dated: December 2, 2022